UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID COTTO, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN ENGLISH, et al., <br><br> Defendants. | CAUSE NO. 3:24-CV-972-JD-JEM |

OPINION AND ORDER

David Cotto, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) As required by 28 U.S.C. § 1915A, the court must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Cotto is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

BACKGROUND

Cotto is presently incarcerated at Pendleton Correctional Facility. (ECF 7.) His complaint stems from events occurring at Miami Correctional Facility ("MCF") in 2023

and 2024.[1] (ECF 1 at 1.) Cotto arrived at MCF in February 2023. He claims that he has mental health problems dating back to childhood. When he arrived at MCF, he felt his unit had a lot of "negativity," which exacerbated his mental health problems. He spoke with Baili Appleton, a mental health provider, and her supervisor, Lauren Rogers, and asked to be moved to the "SNAP" unit designated for inmates with mental illness. They told him he could not move to that unit because employees within the internal affairs department had "placed an STG tag" on him, meaning they had flagged him as a gang member. Cotto acknowledges that he was previously in a gang but claims he has not been active in several years.

Cotto was participating in an education program at that time, but he asked Case Manager Katina Murray about getting a job at the prison, thinking this might improve his mental health. She said she would look into it and contacted Niles Wise, an employee in the prison's internal affairs department. She later told Cotto he would not be given a job because of the "STG tag." Cotto also asked Nathaniel Angle, the unit manager, about getting a job but was told the same thing. Sometime later he got a new case manager, who contacted internal affairs Director Montrel McGee about the issue. The Director allegedly responded that Cotto was "not eligible" for the positions he sought. Cotto claims he obtained copies of email exchanges between several of these

---

[1] The court notes that the narrative section of Cotto's complaint consists of six single-spaced pages of details with little to no punctuation or sentence breaks. This cannot be considered a "short and plain statement" outlining his claim for relief. Fed. R. Civ. P. 8(a). This has made it more difficult for the court to delineate his claims against each of the eleven defendants. Nevertheless, in light of his pro se status, the court has endeavored to screen the complaint as drafted and to give it liberal construction. *Erickson*, 551 U.S. at 94.

employees, which revealed a "clear conspiracy" to deny him a job at the prison. He claims no one at MCF gave him a "chance to clear [his] name" after labeling him a gang member.

He also believes some of these employees were acting in retaliation for a notice of tort claim and grievances he filed when he was first told he could not hold a job because of the "STG flag." He claims internal affairs officers Joshua Snow, Johnson (first name unknown), and Hiseman (first name unknown) stopped him on his way out of the dining hall one night and told him they were "going to teach [him] a lesson about filing grievances." They called him names like "gangbanger" and "low life." A few days later, Sergeant McKibbin (first name unknown) came to his cell to conduct a strip search. He claims Sergeant McKibbin told him the search was being conducted on the orders of the internal affairs department, and that he had been instructed to "ride your ass and get you for whatever I can." Cotto claims he was subjected to strip searches "twice a week for months" by Sergeant McKibbin and on one occasion by Officer Hiseman. He continued to file grievances about these incidents. He also tried to speak with Unit Manager Angle, who allegedly told him, "You started this now they are going to finish it . . . you shouldn't have filed that tort claim."

In early May 2024, he was transferred to long-term segregation at the Westville Control Unit ("WCU"). He claims employees at WCU told him they did not know why he was transferred there. He spent several months at WCU before being transferred to Pendleton. He claims that due to the difficulties he endured at MCF and the lack of

3

treatment for his mental health problems, he suffered a "complete mental breakdown" and attempted suicide.

Based on these events, he sues eleven MCF employees for money damages. He states that he is suing the defendants as follows: Director McGee, Officer Snow, Officer Wise, Officer Hisemen, Officer Johnson, and Sergeant McKibbin for "retaliation, equal protection, cruel and unusual punishment, and intentional infliction of emotional distress"; Ms. Appleton and Ms. Rogers for "equal protection" and "deliberate indifference to serious medical needs"; Unit Manager Angle and Case Worker Murray for "equal protection, retaliation, and intentional infliction of emotional distress"; and Warden Brian English for "failure to train/or supervise."

## ANALYSIS

1. Retaliation

To state a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (citation omitted). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

Cotto satisfies the first prong, because filing a legal claim or grievance qualifies as "protected activity" for purposes of a retaliation claim. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). On the second prong, being subjected to repeated strip searches

4

and being transferred to a long-term segregation unit with harsher conditions could "dissuade a reasonable person from engaging in future First Amendment activity." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). On the third prong, he asserts that Officer Snow, Officer Johnson, Sergeant McKibbin, and Unit Manager Angle all made comments to him suggesting he was being punished for his First Amendment activity. It can be plausibly inferred from his allegations that Director McGee was also involved in the decision to retaliate against him for these activities. He will be permitted to proceed on a claim against these defendants under the First Amendment.

    2.    Equal Protection

To assert an Equal Protection claim, a plaintiff must allege that a state actor purposely discriminated against him on a prohibited basis, such as his race or sex. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Williams v. Dart*, 967 F.3d 625, 637 (7th Cir. 2020). If the disparate treatment is not based on a prohibited ground, it is permissible as long as it is not irrational. *Stevens v. Illinois Dept. of Transp.* 210 F.3d 732, 737-738 (7th Cir. 2000). In the prison context, "prison administrators may treat inmates differently as long as the unequal treatment is rationally related to a legitimate penological interest." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016).

A plaintiff can also state a "class-of one" Equal Protection claim by alleging that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Word v. City of Chicago*, 946 F.3d 391, 395–96 (7th Cir. 2020). However, "even at the pleading stage, a plaintiff must anticipate the burden of eliminating any reasonably conceivable state of facts that could provide a

5

rational basis for the government's actions," and must "provide a sufficiently plausible basis to overcome the applicable presumption of rationality." *Walker v. Samuels*, 543 F. App'x 610, 611 (7th Cir. 2013). Additionally, class-of-one claims cannot be used to challenge discretionary decisions that are "based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 603 (2008). In the prison context, "choosing when and how to apply discipline are discretionary decisions falling under *Engquist*." *Atkinson v. Mackinnon*, No. 14-CV-736-BBC, 2015 WL 506193, at *1 (W.D. Wis. Feb. 6, 2015).

Although Cotto phrase-drops the term "equal protection" throughout his complaint, the exact basis of his claim is unclear. He does not describe any intentional discrimination he suffered based on a prohibited ground. He also does not provide any details about the treatment of other inmates for the court to plausibly infer that he was intentionally treated more harshly than similarly situated inmates for no rational reason. He acknowledges that he was in a gang at one time, and although he said he was no longer active, prison staff "are neither required nor expected to believe everything inmates tell them." *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014). The decision of prison officials to house Cotto in a particular unit, or to prohibit him from participating in certain programming, based on his own unique background and circumstances does not give rise to a plausible Equal Protection claim. *Engquist*, 553 U.S. at 603; *Atkinson*, 2015 WL 506193, at *1.

3. Cruel and Unusual Punishment

Cotto's Eighth Amendment claim can be broken down into two subparts: a claim against medical staff, and a claim against non-medical staff. The court addresses each in turn.

a. Medical Staff

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

On the second prong, deliberate indifference represents a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. This includes appropriate measures to address the risk of self-harm from suicide. *Quinn v. Wexford*

7

*Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021). The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted).

Giving Cotto the inferences to which he is entitled at this stage, he has alleged a serious medical need in connection with his mental health problems, which date back to childhood and resulted in prior hospitalizations. On the second prong, he appears to claim these providers were deliberately indifferent by not transferring him to the SNAP unit. However, the court cannot plausibly infer that these mental health providers had the authority to order his transfer when correctional staff determined he should not be transferred to that unit for security reasons. Nevertheless, his complaint can be read to allege that Ms. Appleton and Ms. Rogers were dismissive of his mental health problems and would not provide him with any form of treatment. As a result, his mental state declined to the point that he suffered a mental breakdown and attempted suicide. He will be permitted to proceed further on a claim against these medical providers.

      b.    Non-Medical Staff

The exact basis of his Eighth Amendment claim against the internal affairs employees and other non-medical staff is not entirely clear. To the extent he is suing them for the denial of medical care, he does not plausibly allege that any of them were responsible for making decisions about his care, and they cannot be held liable for the "misdeeds" of other prison employees. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Although he claims some of these individuals stopped him from being

8

transferred to the SNAP unit, he did not have a constitutional right to the housing assignment of his choice. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). There is no indication that these defendants stood in the way of his receipt of mental health care in another area of the prison if medical providers deemed that necessary. He has not stated a plausible claim for denial of medical care against these non-medical defendants.

He may also be claiming that the "negative" environment he had to endure in his unit at MCF and the failure of staff to provide him with a job violated the Eighth Amendment. The Constitution entitles him to basic human needs such as food and shelter, but does not give him the right to engage in activities or to be housed in a "positive" environment. *See Hudson v. Palmer*, 468 U.S. 517, 524 (1984); *see also Caldwell v. Miller*, 790 F.2d 589, 593 n.16 (7th Cir. 1986) ("[M]ere inactivity, lack of companionship and a low level of intellectual stimulation do not constitute cruel and unusual punishment."). The Constitution also does not grant him the right to hold a prison job. *Cochran v. Buss*, 381 F.3d 637, 641 (7th Cir. 2004); *see also Starry v. Oshkosh Corr. Inst.*, 731 F. App'x 517, 519 (7th Cir. 2018). These allegations do not state a plausible constitutional claim.

He appears to claim that the repeated strip searches he was subjected to violated the Eighth Amendment. "There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Strip searches are generally permissible in the prison context if

9

conducted for a legitimate penological reason. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 330 (2012); *Calhoun*, 319 F.3d at 939. However, a strip search will violate the Eighth Amendment if it is "totally without penological justification" or "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun*, 319 F.3d at 939.

Cotto does not include allegations to suggest that the strip searches were carried out in an unduly harassing manner. However, the complaint can be read to allege that the searches were conducted not for a legitimate penological reason, but in retribution for complaints he made about not being able to get a job. He claims he was subjected to these intrusive searches multiple times over the course of several months at the behest of the internal affairs department. He has plausibly alleged an Eighth Amendment claim against Sergeant McKibbin, Director McGee, Officer Hiseman, Officer Snow, Officer Wise, and Officer Johnson in connection with the strip searches.

4.  Intentional Infliction of Emotional Distress

He also sues several defendants for intentional infliction of emotional distress under Indiana law. A state law tort claim would implicate the Indiana Tort Claims Act ("ITCA"). IND. CODE § 34-13-3 *et seq.* The ITCA prohibits tort suits against government employees personally for conduct within the scope of their employment. *See* IND. CODE § 34-13-3-5(b); *see also Katz-Crank v. Haskett*, 843 F.3d 641, 648 (7th Cir. 2016) ("[T]he Indiana Tort Claims Act confers on public employees a broad immunity from suit for acts committed within the scope of their employment."); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy

10

against the individual employee so long as he was acting within the scope of his employment."). It is evident that the defendants were acting within the scope of their employment as state employees during the events described in the complaint. Under state law, they are shielded from personal liability.[2] *Ball*, 760 F.3d at 645.

5. Failure-to-Train/Supervise

Finally, he sues the Warden. There is no *respondeat superior* liability under 42 U.S.C. § 1983, and this high-ranking official cannot be held liable solely because of his position. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks*, 555 F.3d at 595. There is an insufficient basis in the complaint for the court to plausibly infer that the Warden was personally involved in placing the "STG tag" on Cotto's file, denying him a job, or denying him mental health care. Cotto claims that he wrote to the Warden about these issues, but this alone cannot support a claim for damages. As the Seventh Circuit has explained:

> Public officials do not have a free-floating obligation to put things to rights . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. . . . . [The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [a resolution of the problem]. That can't be right.

---

[2] The ITCA would not bar a claim against their employer, the Indiana Department of Correction, but a claim for damages against this state agency is barred by the Eleventh Amendment in federal court. *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008).

*Id.* The Warden also cannot be held liable for failing to adequately train employees, because a failure-to-train claim can only be brought against a municipal actor, not a state official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005).

He has not stated a plausible damages claim against the Warden in his personal capacity. To the extent he is seeking some form of injunctive relief against the Warden in his official capacity, he is no longer incarcerated at MCF and there is no indication he is likely to return anytime in the near future. Therefore, he cannot seek injunctive relief about the conditions at MCF. *See Kifer v. Ellsworth*, 346 F.3d 1155, 1157 (7th Cir. 2003) (prisoner "cannot benefit from an order to improve conditions in a [facility] in which he is no longer being held"); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996 (if a prisoner leaves a correctional facility, his request for injunctive relief against officials at that facility is moot unless he is likely to be reincarcerated there).

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Baili Appleton and Lauren Rogers in their personal capacity for money damages for deliberate indifference to his need for mental health treatment in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Montrel McGee, Joshua Snow, Johnson (first name unknown), Niles Wise, McKibbin (first name unknown), Hiseman (first name unknown), and Nathanael Angle in their personal capacity for money damages for retaliating against him for filing grievances and a notice of tort claim in violation of the First Amendment;

(3) GRANTS the plaintiff leave to proceed against Montrel McGee, Joshua Snow, Niles Wise, Johnson (first name unknown), McKibbin (first name unknown), and Hiseman (first name unknown) in their personal capacity for money damages for subjecting him to repeated strip searches without a legitimate penological justification in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Brian English and Katina Murray as defendants;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Montrel McGee, Joshua Snow, Niles Wise, Internal Investigations Officer Johnson (first name unknown), Nathanael Angle, Sergeant McKibbin (first name unknown), Internal Investigations Officer Hiseman (first name unknown) at the Indiana Department of Correction and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Baili Appleton and Lauren Rogers at Centurion Health and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(8) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(9) ORDERS Montrell McGee, Joshua Snow, Niles Wise, Johnson, Nathanael Angle, Baili Appleton, Lauren Rogers, McKibbin, and Hiseman to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 21, 2025

/s/JON E. DEGUILIO  
JUDGE  
UNITED STATES DISTRICT COURT